**FILED**
**Aug 20, 2021**
**03:24 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **JERRY YARBOUGH,** | ) | **Docket No. 2020-08-0119** |
| **Employee,** | ) | |
| **v.** | ) | |
| **TRUEBLUE, INC.,** | ) | **State File No. 37277-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **NEW HAMPSHIRE INS. CO.,** | ) | **Judge Deana Seymour** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER

The Court held an Expedited Hearing on August 4, 2021, to determine Jerry Yarbough's entitlement to medical and temporary disability benefits. TrueBlue, Inc. contended it paid all benefits to which Mr. Yarbough was entitled. Based on the proof presented, the Court holds Mr. Yarbough is entitled to a panel of physicians, but he is not entitled to temporary disability benefits at this time. Therefore, his request is granted in part and denied in part.

### History of Claim

Mr. Yarbough started working as an electrician for TrueBlue, a staffing agency, in April 2019. He claimed injuries to the left side of his body after sustaining an electric shock at work on May 22, 2019.[1] The next day he went to Concentra with complaints of a left-hand burn following the electric shock. TrueBlue authorized treatment with Dr. John Hayes at Concentra, but Mr. Yarbough did not select Concentra from a panel.

Dr. Hayes diagnosed Mr. Yarbough with an electrical injury and ordered physical therapy for his left hand as well as an EKG.[2] He placed Mr. Yarbough on light-duty work

---

[1] At the time of his injury, Mr. Yarbough lived in Memphis, TN. After filing his Petition for Benefit Determination, he moved to the Seattle, Washington area.

[2] Mr. Yarbough testified that he advised Dr. Hayes of heart problems during his first visit. While Dr. Hayes's office notes showed that he ordered an EKG, they did not provide the results.

restrictions and treated him conservatively through June 7, when he referred Mr. Yarbough to a neurologist for a possible nerve conduction study. TrueBlue provided a panel of neurologists, and Mr. Yarbough selected Dr. Steven Graham.

Dr. Graham determined on August 6 that Mr. Yarbough sustained no neuropathic injury from the work accident.[3] According to Dr. Graham, Mr. Yarbough complained of left-sided numbness while lying on his left side, which was associated with increased heart rate. However, Dr. Graham explained that these complaints had "no neuropathological correlation" and were "not associated with any type of shock injury." He placed Mr. Yarbough at maximum medical improvement from a neurological standpoint with no permanent neurological impairment. He did not recommend any further evaluation or treatment but advised that Mr. Yarbough could follow up as needed.

Mr. Yarbough testified that TrueBlue failed to provide any real medical care. He noted that Dr. Hayes did not stitch or dress his left hand until he ordered a splint three weeks after the accident. He also claimed that Dr. Graham did not examine him during his visit but simply asked him questions. Mr. Yarbough further testified that Concentra advised that TrueBlue had discontinued his treatment when he attempted to return to Dr. Hayes.

At the time of the hearing, Mr. Yarbough continued to have severe pain on the left side of his body. He complained of heart and circulation issues and two cracked teeth that he related to his electrocution. Mr. Yarbough's daughter, Raquel Tate, and her mother, Marcell Tate, testified about his physical condition after the accident and specifically mentioned his heart issues and his left-sided body pain. However, Mr. Yarbough did not provide medical or dental records related to these issues.

Regarding his claim for temporary disability benefits, Mr. Yarbough testified that he did not receive any income for over a year after his work injury. He also stated that he never turned down light-duty work. According to Mr. Yarbough, he went back to work on May 24 and watched OSHA videos for a few days until he was offered a light duty job on May 29. He advised that he signed the light-duty job offer and worked in that capacity until June 5 when TrueBlue offered him another light-duty job. He signed that offer letter as well and worked in that position until June 10, when TrueBlue's business manager, Troy Rodgers, allegedly told him he could stop coming in and he would get him on disability.

---

[3] Mr. Yarbough moved the Court to exclude Dr. Graham's report and C-30A from evidence, as the doctor gave his opinions without physically examining him. The Court took the motion under advisement. After consideration, the Court overrules the objection, finding the records admissible as they were signed by Dr. Graham.

TrueBlue disputed whether Mr. Yarbough's current need for treatment related to the work accident. It relied on Dr. Graham's conclusions that Mr. Yarbough reached maximum improvement on August 6, 2019, and needed no additional evaluation or treatment for his work-related injury. It argued that the opinion of Dr. Graham was presumed correct, as he was Mr. Yarbough's authorized treating physician. Moreover, Mr. Yarbough offered no medical proof to the contrary.

Mr. Rodgers testified that TrueBlue offered Mr. Yarbough two light-duty positions. However, he stated that Mr. Yarbough did not sign the offer letters. Mr. Rodgers advised that Mr. Yarbough worked light duty on May 29 and 30 and June 5, 7, and 10.[4] According to Mr. Rodgers, TrueBlue paid Mr. Yarbough $935.11 for those five days, but Mr. Yarbough did not report back to work after June 10. Mr. Rodgers did not recall a conversation where he told Mr. Yarbough not to return to work, and he claimed that he did not have authority to put injured workers on disability. He testified Mr. Yarbough was never taken off the employee roster, and TrueBlue would have found Mr. Yarbough work had he contacted someone. He noted that as a staffing agency with thousands of employees, TrueBlue relies on its employees to advise when they can work.

### Findings of Fact and Conclusions of Law

At an Expedited Hearing, Mr. Yarbough must provide sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Initially, Mr. Yarbough asks for additional medical care for his work injury. He claims his left-sided pain and heart issues persist. He also alleges he sustained two cracked teeth during the accident.

TrueBlue relies on Dr. Graham's August 6, 2019 note to support its contention that it provided Mr. Yarbough all the benefits to which he is entitled. It further contends that Dr. Graham's causation and treatment opinions are presumed correct, since he is Mr. Yarbough's authorized treating physician.

While Dr. Graham was selected from a panel, he only addressed Mr. Yarbough's neurological impairment and placed him at maximum medical improvement from a neurological perspective. His opinions do not speak to other injuries and do not mention whether Mr. Yarbough has sustained impairment or reached maximum medical improvement from the standpoint of other medical specialties.

Further, Dr. Graham's maximum medical improvement determination does not

---

[4] Claims Manager Laurie Corwin's affidavit supported this testimony.

end Mr. Yarbough's entitlement to ongoing medical treatment for conditions related to the work accident. *See Kennedy v. Lakeway Auto Sales, Inc.*, No. E2010-02422-WC-R3-WC, 2011 Tenn. LEXIS 842, at *8-10 (Aug. 30, 2011) (quoting *Casey v. Shoney's, Inc.*, 845 S.W.2d 740, 742-44 (Tenn. 1992) for the proposition that "[i]n the absence of evidence directed specifically to the issue" of termination of treatment, "the employer must provide [the employee with] future, free reasonably necessary medical . . . treatment" even after the employee is discharged from his treating physician).

Based on the evidence presented, Mr. Yarbough is likely to prevail in establishing that the electric shock at work resulted in injury. While he has not yet proven the compensability of his injuries by a preponderance of the evidence, he is entitled to be seen by a physician for his complaints. Therefore, Mr. Yarbough is entitled to a panel of Occupational Medicine or Physical Medicine and Rehabilitation physicians in his current community near Seattle, Washington.

Mr. Yarbough also requests temporary disability benefits because he went without income for a year after his accident. To prove entitlement to temporary disability benefits, he must show (1) disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Constr. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

Dr. Hayes placed Mr. Yarbough on light-duty restrictions on May 23, 2019, that remained in place until August 6, when he saw Dr. Graham. However, Mr. Yarbough has not been taken off work or placed on restrictions since his visit with Dr. Graham. Thus, the duration of disability is May 23 through August 6, 2019.

During that period, Mr. Yarbough claimed he worked in a light-duty capacity from May 24 to June 10. According to Mr. Rodgers, TrueBlue documented that he was paid $935.11 for five days worked. However, without check stubs or other documentation showing exactly when Mr. Yarbough worked and how much he earned, the Court cannot determine if he is entitled to temporary disability while he was working light duty.

Further, the parties dispute the reasoning behind Mr. Yarbough's failure to return to work after June 10. TrueBlue argued that Mr. Yarbough failed to report back, which it considered a rejection of its light-duty offer. Mr. Yarbough claimed Mr. Rodgers told him he could stop coming in, which Mr. Rodgers denied. In cases such as this, the Court must assess "the reasonableness of the employer in attempting to return the employee to work and the reasonableness of the employee in failing to return to work." *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *12-13 (July 22, 2016). The Court finds Mr. Yarbough's failure to return to work unreasonable.

Both parties agreed that TrueBlue offered Mr. Yarbough light duty on May 29 and again on June 5, and that he worked light duty until June 10. However, due to what appears to be a miscommunication, Mr. Yarbough did not return to work after June 10. Moreover, after leaving work on June 10, he never contacted TrueBlue to ask about his work status.

Mr. Rodgers did not remember telling Mr. Yarbough not to return to work, and he emphatically denied that he had authority to place Mr. Yarbough on disability. According to Mr. Rodgers, Mr. Yarbough was never taken off the employee roster, and TrueBlue would have found him work had he contacted someone. He also noted that, as a staffing agency with thousands of employees, TrueBlue relies on its employees to advise when they can work. Based upon the foregoing, the Court holds that Mr. Yarbough is unlikely to prevail at a hearing on his claim for temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. TrueBlue shall provide Mr. Yarbough with a panel of Occupational Medicine or Physical Medicine and Rehabilitation physicians from which he may select his authorized treating physician under Tennessee Code Annotated Section 50-6-204 (2020).

2. Mr. Yarbough's request for temporary disability benefits is denied at this time.

3. This case is set for a Scheduling Hearing on **October 4, 2021,** at **9:30** a.m. Central Time. The parties must call toll-free at 866-943-0014 to participate in the Hearing. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED August 20, 2021.**

_____
**Judge Deana C. Seymour**
**Court of Workers' Compensation Claims**

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order on Show Cause Hearing
4. Request for Expedited Hearing
5. Rule 72 Declaration of Jerry Yarbough

6. Employer's Pre-Hearing Statement
7. Employer's Witness and Exhibit List
8. Employer's Amended Witness and Exhibit List
9. Addendum to Employer's Expedited Hearing Brief
10. Employer's Notice of Filing Exhibits
11. Order on Pre-Hearing Conference
12. Employee's Motion for Dismissal
13. Employer's Response to Employee's Motion to Dismiss

Exhibits
1. Dr. Graham's 8/16/19 report
2. Final Medical Report
3. Wage Statement
4. Employee's Choice of Physician form
5. Light Duty Work offers (Collective)
6. Affidavit of Laurie Corwin
7. Affidavit of Troy Rodgers
8. Rule 72 Declaration of Charlie Lanier
9. Dr. Hayes's medical records for dates of service from 5/23/19 to 6/7/19 (Collective)

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on August 20, 2021.

| Name | Certified Mail | Via USPS | Via Email | Service sent to: |
|---|---|---|---|---|
| Jerry Yarbough, Self-Represented Employee | | | X | jerryyarbough@gmail.com |
| David Goudie, Employer's Attorney | | | X | dgoudie@morganakins.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**

6



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*